**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| In re: | : | |
| | : | |
| SHANDAR HOLDING CORP. | : | Civil Case No. 12-7336 (FLW) |
| | : | Bankr. Case No. 12-12718 (KCF) |
| Debtor | : | |
| | : | **OPINION** |
| | : | |

**WOLFSON, United States District Judge:**

  Appellant-Plaintiff Shandar Holding Corp., through the Chapter 7 Bankruptcy Trustee, Barry Frost, Esq., ("Debtor" or "Shandar"), appeals from the Bankruptcy Court's October 26, 2012 orders (1) granting Appellee-Creditor West Main 28 LLC.'s ("Creditor" or "West Main") Motion for Summary Judgment on Counts One and Three of Shandar's Adversary Complaint and (2) denying Shandar's Cross-Motion for Summary Judgment. On appeal, Shandar argues that the Bankruptcy Court erred in not applying the merger doctrine, as set forth in In re Stendardo, 991 F.2d 1089 (3d Cir. 1993), and finding instead that West Main was entitled to collect an additional $134,486.33 in taxes paid following the entry of a final judgment of foreclosure on certain of Debtor's real property. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the reasons that follow, this Court will affirm the decision of the Bankruptcy Court.

  I.  **BACKGROUND**

  The Bankruptcy Court found the following facts in its October 15, 2012 decision on the record, granting West Main's motion for summary judgment and denying

Shandar's cross-motion for summary judgment. These facts are undisputed by the parties on this appeal, and will be supplemented by other facts from the record where appropriate.

West Main[1] obtained, following the entry of default against Shandar, a final judgment of foreclosure on September 20, 2011[2] against Shandar's property located at 28 West Main Street in Somerville, New Jersey (the "Property").[3] Bankr. Ct. Hearing, Oct. 15, 2012, at 6; Debtor Br., App'x at A125 (Final Judgment for Foreclosure). After judgment was entered, but before any foreclosure sale was held, West Main advanced money to redeem tax liens on the Property. Bankr. Ct. Hearing, Oct. 15, 2012, at 6. In that connection, and pursuant to N.J. Ct. R. 1:34-6(10), West Main applied to the New Jersey Office of Foreclosure for an order authorizing the sheriff to pay additional sums to West Main, and on December 9, 2011, West Main obtained an order from the Superior Court directing the sheriff to pay additional sums to plaintiff (the "Order to Pay Additional Sums"). Bankr. Ct. Hearing, Oct. 15, 2012, at 6; Debtor Br., App'x at 134 (Certification in Support of Order), 135 (Order). The Order to Pay Additional Sums specifically provided that the Sheriff of Somerset County was to pay West Main from the

---

[1] West Main is the successor in interest to several entities that held a mortgage on Shandar's property, namely Yardville National Bank and PNC Bank. Adv. Compl., ¶¶ 12-14, 18. PNC Bank was the entity that commenced the foreclosure proceeding against Shandar, and, following the entry of a final judgment of foreclosure, PNC Bank assigned its rights under the judgment to West Main. Id., ¶ 18; Debtor Br., App'x at A132 (Assignment of Foreclosure Judgment). These entities are not otherwise relevant to this appeal.

[2] The Bankruptcy Court's October 15, 2012 decision incorrectly sets forth the date of judgment as June 20, 2011. This fact is not material to either the Bankruptcy Court's decision or this appeal.

[3] I note that, in addition to West Main, Charles Richard Shanahan and Gladys I. Shanahan are holders of several junior mortgages on the Property. Debtor Br., App'x at A6-7 (Adv. Complaint).

sale of the Property $134,486.83, in addition to the amount set forth in the final judgment of foreclosure. Bankr. Ct. Hearing, Oct. 15, 2012, at 6; Debtor Br., App'x at 135 (Order).

Prior to any sheriff sale on the Property, Shandar filed a bankruptcy petition on February 3, 2012.[4]  Bankr. No. 12-12718, Dkt. No. 1 (Bankruptcy Petition).  On March 8, 2012, Shandar filed an Adversary Complaint against West Main, seeking, inter alia declaratory relief that, based on New Jersey's merger doctrine, Shandar is under no obligation to pay taxes, or other expenses, on the Property that West Main advanced after entry of the foreclosure judgment ("Count One"),[5] and barring Shandar from bringing any claim for post-judgment payment of taxes on the Property ("Third Count").[6]  Debtor Br., App'x at A1 (Adv. Proceeding Compl.).  West Main subsequently moved for summary judgment as to Count One and the Third Count of the Adversary Complaint, and Shandar cross-moved for summary judgment on the same Counts.  Id. at A23-A178 (West Main's motion), A179-A200 (Shandar's cross-motion).  The Bankruptcy Court held a hearing on the parties' motions on September 10, 2012, at which time the Bankruptcy Court rejected Shandar's argument that the Third Circuit case, In re

---

[4] Debtor filed a Chapter 11 Proceeding, which was later converted to Chapter 7. See Bankr. Dkt. 12-12718, No. 1 (Chapter 11 Petition), No. 136 (Jan. 15, 2013 Order Converting Case to Chapter 7).

[5] In Count One of the Adversary Complaint, Shandar sought to avoid any claim, secured or unsecured, of West Main based on the Order to Pay Additional Sums. See Debtor Br., App'x at A5 (Adv. Proceeding Compl.) ("[Shandar] seeks judgment . . . [d]eclaring that the amount due [West Main] does not include any money for real property taxes paid after the entry of the final judgment of foreclosure."). On appeal, however, Shandar only challenges the Bankruptcy Court's determination that the amount of the Order to Pay Additional Sums should be included in West Main's secured claim. Deb. Br. at 15. I limit my analysis accordingly.

[6] The Second Count of the Adversary Complaint requests a judgment "fixing the extent, validity and priority of the judgment of foreclosure and the mortgages and other liens, if any, that are set forth in this [A]dversary [C]omplaint." See Debtor Br., App'x at A8 (Adv. Proceeding Compl.); see also supra Footnote 3.

Stendardo (Stendardo), 91 F.2d 1089 (3d Cir. 1993), controlled. Bankr. Ct. Hearing, Sept. 10, 2012, at 9-10, 13. The Bankruptcy Court reserved judgment on all other issues, and ordered the parties to submit supplemental briefing on (1) whether Shandar's Adversary Complaint was barred under the Rooker-Feldman doctrine, and (2) the legal significance of an order issued pursuant to R. 1:34-6(10), requiring the sheriff to pay additional sums following a foreclosure judgment. See id. at 11-13; see also Bankr. Ct. Hearing, Oct. 15, 2012, at 8-9.

Following these supplemental submissions, the Bankruptcy Court held another hearing on the parties' motions on October 15, 2012. In its oral decision, the Bankruptcy Court concluded that the Order to Pay Additional Sums constituted a valid amendment to the foreclosure judgment, increasing West Main's claim against Shandar by the amount of that order.[7] Id. at 9-11. In reaching this conclusion, the Bankruptcy Court noted that the parties provided the court with little guidance on this issue, requiring the Bankruptcy Court to analyze New Jersey foreclosure law. Id. The Bankruptcy Court placed great significance on the language of the Order to Pay Additional Sums, and explained that such an order "could have no other purpose than to augment the final foreclosure judgment." Id. at 10; see also id. ("The purpose of the [O]rder is clear. Judge Jacobson [of the Superior Court] was increasing the amount of the writ of execution by $134,486.83."). Accordingly, the Bankruptcy Court granted West Main's motion, denied

---

[7]    In rendering its decision, the Bankruptcy Court first noted that, in light of recent case law "the boundaries of Rooker-Feldman are murky at best," citing Great Western Mining and Mineral Co. v Fox Rothschild, 615 F.3d 159 (3d Cir. 2010), and Exxon Mobil Corp. v Saudi Basic Indus. Corp., 544 U.S. 280 (2005), in support of this proposition. Bankr. Ct. Hearing, Oct. 15, 2012, at 7. The Bankruptcy Court then assumed, for the purposes of the parties' motions, that Rooker-Feldman did not apply, allowing the court to exercise jurisdiction over the matter. Id.

4

Shandar's cross-motion, and ordered that West Main's claim include the additional funds in the amount set forth in the Order to Pay Additional Sums. Id. at 11; see also Dkt. No. 1-1 (Bankr. Ct. Order of Oct. 26, 2012, denying summary judgment to Shandar); Dkt. No. 1-2 (Bankr. Ct. Order of Oct. 26, 2012, granting summary judgment to West Main). It is from these decisions and orders that Shandar now appeals.

## II.   STANDARD OF REVIEW

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." In re Beers, No. 3:09-CV-01666, 2009 WL 4282270, at *3 (D.N.J. Nov. 30, 2009) (quoting Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 157 (D.N.J. 2005). A district court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005) (quoting In re Trans World Airlines, Inc., 145 F.3d 124, 130-31 (3d Cir. 1998)). Because Shandar is clearly seeking review of legal determinations made by the Bankruptcy Court on motions for summary judgment, the Court finds that the plenary standard of review applies. Accord Sheehan v. Dobin, No. 10-6288 (FLW), 2011 WL 3625586, at *2 (D.N.J. Aug. 15, 2011).

## III.   DISCUSSION

Shandar argues on appeal that the Bankruptcy Court erred when it concluded that the Order to Pay Additional Sums amended the foreclosure order, thereby increasing West Main's secured claim against Shandar.[8] In that connection, Shandar first argues

---

[8] I briefly address whether Rooker-Feldman bars jurisdiction over Shandar's Adversary Complaint, as the Bankruptcy Court initially raised concerns over subject matter jurisdiction without conclusively resolving whether jurisdiction existed, see

5

that under Stendardo and related case law, New Jersey's merger doctrine controls, such that once West Main obtained the foreclosure judgment on the Property, all of Shandar's obligations, including payment of real estate taxes, merged into the foreclosure judgment. Debtor Br. at 7-10. Shandar additionally argues that, even if Stendardo does not control, the Bankruptcy Court misinterpreted New Jersey foreclosure law when it concluded that the Order to Pay Additional Sums amended the amount of the foreclosure judgment on the Property. Id. at 10-14. West Main opposes Shandar's appeal, contending that the Bankruptcy Court correctly interpreted the relevant law and the effect of the Order to Pay Additional Sums. I address each of Shandar's arguments in turn.

"Under the merger doctrine, a contract is deemed to merge with the judgment, thereby depriving a plaintiff from being able to assert claims based on the terms and provisions of the contractual instrument." In re A & P Diversified Technologies Realty, Inc., 467 F.3d 337, 341 (3d Cir. 2006). "In New Jersey, as in many states, the mortgage

---

Bankr. Ct. Hearing, Oct. 15, 2012, at 7, and this Court has an independent and continuing obligation to ensure that it has subject matter jurisdiction. See, e.g., Hirschbach v. NVE Bank, 496 F. Supp. 2d 451, 453 (D.N.J. 2007) ("[A District] Court has an obligation to satisfy itself that it has subject matter jurisdiction over a case and to address the issue sua sponte." (Citing Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir.1999), overruled on other grounds by Exxon Mobil Corp. v. Allapattah Svcs., Inc., 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005))).

  Here, Shandar is not seeking to invalidate the Order to Pay Additional Sums. Rather, Shandar seeks a judgment that would preclude the Bankruptcy Court from giving effect to the Order to Pay Additional Sums to the extent that it would increase West Main's secured claim against the Bankruptcy Estate. See supra Footnote 5. Under Great Western Mineral & Mining Co., Shandar's claim is not barred by Rooker-Feldman because granting Shandar the relief requested would not have the effect of invalidating either the state court foreclosure judgment or the Order to Pay Additional Sums. Indeed, Shandar's request for relief is narrow. Shandar simply seeks to prevent the Bankruptcy Court from treating that order as having amended the foreclosure judgment for the purposes of determining the amount of West Main's secured claim against Shandar, and such relief would not require invalidating the state court's decisions. Thus, I conclude that the Bankruptcy Court properly exercised jurisdiction over Shandar's claims, and that this Court also has jurisdiction to hear the instant appeal.

is merged into the final judgment of foreclosure and the mortgage contract is extinguished." In re Roach, 824 F.2d 1370, 1377 (3d Cir. 1987); see also Virginia Beach Fed. v. The Bank of New York/Nat'l Cmty. Div., 299 N.J. Super. 181, 188 (1997). As the Virginia Beach court explained:

> In light of the well-settled principle that a mortgage merges into the judgment of foreclosure, we are satisfied that in the normal course a fair construction of N.J.S.A. 2A:50-37[9] and [N.J. Ct.] R. 4:64-3[10] requires rejection of the claim of a foreclosing first mortgagee to any expenses incurred after the final judgment of foreclosure unless that judgment has been amended prior to the sheriff's sale.

Id.; see also Resolution Trust Corp. v. Griffin, N.J. Super. 88, 89 (Ch. Div.) (holding that following the entry of a final foreclosure judgment, the "mortgage itself no longer has legal vitality").

Thus, for example, if a mortgagee advances funds post-judgment to pay for taxes on the foreclosed property, the mortgagee will not be automatically entitled to recover those advances unless the mortgage "clearly evidence[s] an intent to preserve" such an obligation. In re A & P, 467 F.3d at 343. Similarly, in the context of a bankruptcy proceeding, the Third Circuit held in Stendardo that a mortgagee may not include post-foreclosure judgment tax advances as part of its secured claim against a debtor-mortgagor unless the mortgage specifically obligated the mortgagor to pay post-judgment taxes.[11]

---

[9]  N.J.S.A. 2A:50-37 governs foreclosure sales, and provides that the proceeds from a sheriff's foreclosure sale "shall be applied to pay off and discharge the moneys ordered to be paid." (Emphasis added.). If any surplus remains, those moneys "shall be deposited with the court and the same shall be paid to the person or persons entitled thereto, upon application therefore, as the court shall determine." Id.

[10]  N.J. Ct. R. 4:64-3 sets forth the necessary information to be provided by the foreclosing party, as well as the procedure for presenting it.

[11]  Although Stendardo was decided by applying Pennsylvania law, the Third Circuit has recognized that a similar outcome is warranted under New Jersey law. See In re A & P, 467 F.3d at 342 (extending Stendardo to New Jersey proceedings).

In re Stendardo, 91 F.2d at 1095; see also In re A& P, 467 F.3d at 343 (holding that the mortgage in question did not "clearly evidence an intent to preserve the effectiveness of the attorneys' fees and expenses provision following the entry of the foreclosure judgment . . . [concluding that] the broad waiver language in the mortgage does not suffice to avoid the merger doctrine, and the exception to the merger doctrine therefore does not apply").

In the present case, Shandar argues that the merger doctrine and Stendardo preclude West Main from including in its secured claim the amount set forth in the Order to Pay Additional Sums because nothing in the underlying mortgage documents obligated Shandar to pay anything, including real estate taxes, to the mortgagee following the entry of a foreclosure judgment.[12] The Bankruptcy Court rejected Shandar's argument primarily on the grounds that, in Stendardo, the creditor-mortgagor sought to increase its proof of claim in the bankruptcy proceedings without having obtained any prior state court order or judgment, whereas in the present case, West Main based its secured claim on an existing state court order – the Order to Pay Additional Sums.

On appeal, Shandar raises the same argument it did before the Bankruptcy Court, contending that the Bankruptcy Court wrongly determined that Stendardo did not foreclose West Main from seeking additional funds for real property taxes. I agree with

---

[12] In that connection, I note that West Main, in opposition, places much significance on the fact that these tax delinquencies arose prior to the entry of the foreclosure judgment, when the mortgage was still in effect. Based on this fact, West Main argues that Shandar's obligation to pay these taxes was not extinguished by the foreclosure judgment, even if West Main ultimately advanced the funds to redeem the tax liens after the judgment. West Main Br. at 5-6. However, the Court cannot find any Third Circuit or New Jersey case law drawing such distinction in a merger doctrine analysis. Rather, as explained above, the salient fact in determining whether the merger doctrine applies appears to be the date that the mortgagee advanced funds to pay taxes, not when the obligation to pay taxes arose.

8

the Bankruptcy Court's conclusion that Stendardo does not apply to the facts of this case. As discussed in more detail infra, the Order to Pay Additional Sums represents a valid procedure in New Jersey for a party to collect taxes or other expenses advanced to maintain property after a foreclosure judgment but prior to a foreclosure sale. Stendardo is therefore inapposite because, unlike the creditor in Stendardo, West Main is not seeking to increase its secured claim based wholly on its own representations to the Bankruptcy Court, but on a valid state court order entitling West Main to additional funds. For the same reason, Shandar's reliance on In re Wingora, 209 B.R. 632 (Bankr. D.N.J. 1997), is also misplaced. In Wingora, the mortgagee did not argue that the Stendardo exception to the merger doctrine applied, or that there was any basis in state law to augment the foreclosure judgment by adding post-judgment taxes; instead the mortgagee simply contended that Stendardo was no longer good law. Wingora, 209 B.R. at 635-36. The Wingora court rejected the argument that the merger doctrine did not apply, and, without further analysis, followed Stendardo's holding that a "mortgagee cannot add post-judgment advances for taxes and insurance to its secured claim," Id. at 636, where there was no amendment or other state court order to support the mortgagee's claim for additional funds. Although the mortgagee in Wingora argued that it had obtained orders for the additional funds, the debtor contested that such orders existed, and no such orders were ever produced to the Wingora court.[13] Contrary to Shandar's

---

[13] The mortgagee claimed it had obtained orders pursuant to N.J. Ct. R. 1:34-6(5), which is apparently the previous numbering for R. 1:34-6(10).

position, the Wingora court was not presented with the issue presently before this Court, and thus neither Stendardo nor Wingora control in this case.[14]

The remaining issue in this appeal is whether the Order to Pay Additional Sums, pursuant to New Jersey Court Rule 1:34-6(10), should be considered as having the same effect, for the purposes of bankruptcy proceedings, as an amendment to the foreclosure judgment. I conclude that it does.

As explained above, a mortgagor in New Jersey is generally relieved of its obligations under the mortgage following a foreclosure judgment. Nothing, however, precludes the mortgagee from augmenting the foreclosure judgment by seeking an amendment based on additional taxes paid after the entry of a foreclosure judgment, but prior to the foreclosure sale. For example, in Resolution Trust the court explained that under N.J. Ct. R 4:50-1(f), it had the authority to amend the foreclosure judgment to include real estate taxes and insurance premiums "if deemed right and equitable, provided there is no adverse effect on intervening rights of other parties."[15] Id. at 92; see

---

[14] I note that West Main further attempts to distinguish Stendardo and Wingora on the basis that they were Chapter 13 cases, whereas Shandar filed a Chapter 11 petition that was later converted to a Chapter 7 case. Deb. Br. at 4, 8. In holding that Stendardo does not control, I offer no opinion on any distinction in the application of the merger doctrine to cases filed under Chapters 7, 11, or 13. Instead, I base my decision solely on the fact that West Main holds a valid state court order to collect additional funds from the foreclosure sale.

[15] The Resolution Trust court further noted that:

> It is not unusual in a foreclosure action that a foreclosing bank may discover, after entry of final judgment but before the sheriff's sale is advertised, that additional real estate taxes and, perhaps, insurance premiums, have been advanced by it and not set forth in the affidavit of proof upon which the final judgment has been entered. A motion, at that point, to amend the judgment and writ is rarely, if ever, opposed; the relief is granted; the amount due in both the judgment and writ is ordered amended and the sale then proceeds under the amended writ.

also Stewart Title Guar. Co. v. Lewis, 347 N.J. Super. 127, 139 (Ch. Div. 2001) (permitting amendment of foreclosure judgment to include taxes paid to redeem property, otherwise mortgagor would "obtain a windfall to which she is not truly entitled"); Summit Bus. Capital Corp. v. Quinn-Woodbine Realty & Leasing Co., No. F-16397-01, 2006 WL 1549791, at *5 (N.J. App. Div. June 8, 2006) (per curiam) (reversing trial court's denial of motion to amend foreclosure judgment based, in part, on fact that mortgagee "advanced payments for real property taxes, which served to avoid a tax sale of the property and the accrual of interest on unpaid taxes").

Indeed, in uncontested foreclosure actions, such as the one in the present case, New Jersey provides a specific form of relief to mortgagees who incur post-judgment, but presale, expenses in maintaining and/or preserving the foreclosed property. In these cases, the mortgagee may apply to the New Jersey Office of Foreclosure to obtain, inter alia, a recommendation for an order "authorizing the sheriff to collect additional lawful sums" at the time of the foreclosure sale.[16] N.J. Ct. R. 1:34-6(10); Summit Bus. Capital Corp. v. Quinn-Woodbine Realty & Leasing Co., 2006 WL 1549791, at *5. In Summit, the Appellate Division explained, approvingly, that: "Acting pursuant to the rule [R. 1:34-6], the [Office of Foreclosure] has recommended the entry of orders allowing the

---

N.J. Super. at 92. In Resolution Trust, however, the obligations for taxes and insurance were the responsibility of the property owner pre- and post-sale. Id. at 93-94. Nevertheless, because the foreclosure sale had already occurred in that case, the court held that the mortgagee could not seek to collect additional funds through amending the foreclosure judgment. Id. at 92 ("However, once the sale takes place, the Sheriff must comply with the terms of the writ in disbursing the money received.").

[16] As explained by a commentator in the New Jersey Practice Series, "The order [authorizing the sheriff to collect additional funds] is entered ex parte with a supporting certification itemizing the advances made by plaintiff[-mortgagee] and explaining what they were for." 30A MYRON C. WEINSTEIN, NEW JERSEY PRACTICE, LAW OF MORTGAGES, § 31.47 (2d ed. 2012).

11

mortgagee to obtain reimbursement for taxes, insurance and other amounts for the preservation of property." Summit Bus. Capital Corp., 2006 WL 1549791, at *5 (internal quotation marks omitted) (quoting Myron C. Weinstein, Court Voids Post-Judgment Advances for Mortgagees, 148 N.J.L.J. 176 (April 14, 1997)).

Once the Office of Foreclosure recommends the entry of an order authorizing the collection of additional sums, and the a judge of the New Jersey Superior Court approves such an order, the order is delivered to the sheriff conducting the foreclosure sale. Summit Bus. Capital Corp., 2006 WL 1549791, at *5. Because, as noted earlier, the sheriff is required to pay the foreclosing mortgagee "the moneys ordered to be paid" from the proceeds of the foreclosure sale, see N.J.S.A. 2A:50-37,[17] the order to pay additional sums permits a foreclosing mortgagee to recover the amounts set forth in both the foreclosure judgment and the order to pay additional sums. Summit Bus. Capital Corp., 2006 WL 1549791, at *5; see also 30A MYRON C. WEINSTEIN, NEW JERSEY PRACTICE, LAW OF MORTGAGES, § 31.47 (2d ed. 2012) ("The order [to collect additional funds], if delivered to the sheriff before sale, will authorize the sheriff to add the sum specified in the order to the judgment and execution amount and to collect these sums out of the proceeds of sale."). Thus, a foreclosing mortgagee who obtains an order to pay additional sums can be made "whole" for its post-foreclosure expenses that have been approved by the Office of Foreclosure and a Superior Court judge, by collecting from the foreclosure sale proceeds in the amount of the foreclosure judgment as well as the amount set forth in the R. 1:34-6(10) order.

---

[17] See also supra Footnote 9.

In the present case, West Main obtained an unopposed foreclosure judgment against the Property in the amount of $577,205.40, which, after attorney fees, interest, and a portion of the sheriff's commission, increased to $599,138 on the date of the Bankruptcy Court approved sale. Prior to this sale, and prior even to Shandar's filing of its bankruptcy petition, West Main also obtained, following a recommendation from the Office of Foreclosure, an order authorizing the sheriff to collect additional funds for advances that West Main had made to redeem tax certificates for the Property in the amount of $134,486.83.[18] Debtor Br., App'x at 134 (Certification in Support of Order), 135 (Order). Had Shandar not filed for bankruptcy, and had a routine sheriff's sale been held, there can be no dispute that on the date of the foreclosure sale the sheriff would be required to deliver to West Main (1) the entire amount of the foreclosure judgment of $577,205.40, plus applicable interest, fees, and commission, and (2) the additional $134,486.83 contained in the Order to Pay Additional Sums. Indeed, as no other order had been entered in this case, West Main would have been automatically entitled to these funds at the sheriff's sale, without needing to return to the Superior Court to apply for additional funds from any surplus proceeds. Summit Bus. Capital Corp., 2006 WL 1549791, at *5.

Significantly, the New Jersey Appellate Division has considered an order issued pursuant to R. 1:34-6(10) as the equivalent, for purposes of a sheriff sale, of an actual amended foreclosure judgment.[19] Summit Bus. Capital Corp., 2006 WL 1549791, at *5

---

[18] In that connection, I note that the same Superior Court judge, Judge Jacobson, issued the final foreclosure judgment and the Order to Pay Additional Sums. See Debtor Br., App'x at A125-27 (Judgment), A135-36 (Order).

[19] Simply because the Order to Pay Additional Sums was not part of the foreclosure judgment itself does not necessarily mean that West Main's security interest in the

13

(describing an order issued pursuant to R. 1:34-6(10) as arising from the court's "authority to amend a final judgment of foreclosure," and holding that the trial court abused its discretion in failing to allow the mortgagee to amend the judgment by "follow[ing] a procedure sanctioned in Virginia Beach and routinely followed by the [Office of Foreclousre] in uncontested matters."). Accordingly, I see no reason, and Shandar has advanced none, that West Main's rights to collect additional funds from the foreclosure sale should be treated any differently in a bankruptcy proceeding than under New Jersey law. Cf. BFP v. Resolution Trust Corp., 511 U.S. 531, 544-45 (1994) ("[T]he Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."). I therefore conclude that the Bankruptcy Court correctly determined that West Main should be entitled to the additional $134,486.83, as provided for in the Order to Pay Additional Sums, as part of its secured proof of claim against Shandar.[20]

## IV. CONCLUSION

For the reasons set forth above, the Court determines that the Bankruptcy Court correctly concluded that West Main's secured claim against Shandar properly included

---

Property was not amended by the Order to Pay Additional Sums. See First Nat. Fid. Corp. v. Perry, 945 F.2d 61, 64 (3d Cir. 1991) ("Even though the contractual terms between the parties in this case have merged into the entry of judgment of foreclosure, the security interest or lien against the property continues to be the product of the consensual arrangement between debtor and lender."). Given that New Jersey routinely treats orders issued pursuant to R 1:34-6(10) as effectively amending a foreclosure judgment, see Summit Bus. Capital Corp., 2006 WL 1549791, I reject Shandar's contention that the Order to Pay Additional Sums was "simply an instruction to the sheriff to raise additional money at a sale." Deb. Br. at 12-13.

[20] Shandar raises a third point on appeal, that that Bankruptcy Court erred by not deeming the foreclosure judgment satisfied by the proceeds of the foreclosure sale. See Debtor Br. at 15. Because I conclude that the Bankruptcy Court did not err in concluding that West Main properly included the amount authorized by the Order to Pay Additional Sums in its proof of claim, and because West Main has not yet received those funds, I also conclude that the Bankruptcy Court did not err in deeming the foreclosure judgment to be not satisfied.

14

the amounts set forth in both the foreclosure judgment and the Order to Pay Additional Sums.  Therefore, the Bankruptcy Court's decision granting summary judgment to West Main is **AFFIRMED**.

An Order will be entered consistent with this Opinion.


Dated:  July 22, 2013                             /s/      Freda L. Wolfson
                                                  Freda L. Wolfson, U.S.D.J.